# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CRYSTAL COLEMAN,**

        **Plaintiff,**

**-vs-**                                          **Case No. 6:10-cv-1425-Orl-28GJK**

**CIRCLE K STORES, INC., and**
**CONSTITUTION STATE SERVICES, LLC,**

        **Defendants.**

_____

## ORDER

This action for malicious prosecution stems from Plaintiff's arrest and prosecution for insurance fraud in connection with filing a workers' compensation claim. After Plaintiff was acquitted of that charge, she filed this suit against her former employer, Circle K Stores, Inc. ("Circle K") and the claims administrator for Circle K's workers' compensation insurance policy, Constitution State Services, LLC ("CSS").[1] Plaintiff and Circle K have settled all claims against Circle K, (see Docs. 30 & 35); thus, the only claim remaining is Plaintiff's malicious prosecution claim against CSS, and CSS has moved for summary judgment on that claim, (Doc. 36). As discussed below, CSS's motion shall be granted.

### I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] CSS is a division of Travelers Indemnity Company ("Travelers"). (See Walker Dep., Mar. 16, 2012, Doc. 50-12, at 6, 13).

Fed. R. Civ. P. 56(a). When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). However, the failure to respond and create a factual dispute by the nonmoving party "does not automatically authorize the entry of summary judgment for the moving party." Dixie Stevedores, Inc. v. Marinic Maritime, Ltd., 778 F.2d 670, 673 (11th Cir. 1985). "Rule 56 requires the moving party to demonstrate the absence of a genuine issue of fact." Id.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must be material and genuine. That is, the factual evidence must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## II. Background

On June 28, 2006, Plaintiff was working for Circle K when she injured her lower back while unloading candy totes ("the subject injury"). Plaintiff filed a workers' compensation claim for the subject injury. On July 14, 2006, the claims adjuster for CSS–Karen Walker–contacted Plaintiff in order to gather some basic information regarding the incident and Plaintiff's medical history and to give Plaintiff an overview of her workers' compensation

benefits. (Walker Dep., Mar. 16, 2012, at 50; see also Coleman Recorded Statement, Doc. 50-2)). During this conversation, Plaintiff indicated that the pain from the subject injury was focused in the left side of her lower back and down into her hip. (Coleman Recorded Statement at 5). Additionally, Walker asked: "Have you ever had trouble with your back or [] hip before?"; Plaintiff answered that she had "pulled [her] back a few times over the years . . but . . . never had a hip problem." (Id. at 12). Plaintiff also recounted that she had been injured at work once before but that she sustained "no permanent problems" from that incident, (id. at 12); in addition, Plaintiff mentioned a vehicle accident that occurred in 1997 or 1998 but stated that she did not incur any injuries from it, (id. at 13).

Thereafter, Plaintiff received workers' compensation benefits without incident until her treating physicians determined that she had reached "maximum medical improvement" on October 25, 2006, (Pretrial Stipulation & Pretrial Compliance Questionnaire, Doc. 50-4, at 2), which caused a decrease in Plaintiff's benefits. Plaintiff then filed a Petition for Benefits pursuant to section 440.192, Florida Statutes. (Shoemaker Decl., Doc. 50-3, ¶¶ 2-3). During the discovery process related to Plaintiff's Petition, Plaintiff was deposed and medical records from her chiropractor, Dr. Rose, were obtained.

In her deposition, Plaintiff detailed more of her medical history. She reiterated that she had pulled muscles in her back before, (Coleman Dep., Doc. 50-1, at 13-14, 20-21, 55), and elaborated on her previous work incident and the vehicle accident, (id. at 16-19). Notably, Plaintiff stated that she suffered permanent injuries to her head and neck from the vehicle accident. (Id. at 18). Plaintiff also disclosed that she had previously fallen and torn all of the tendons in her left shoulder. (Id. at 27). Despite these additional disclosures,

-3-

however, Plaintiff confirmed that she had never had an injury similar to the subject injury.[2] (Id. at 55, 58).

Plaintiff first began receiving treatment from Dr. Rose on March 24, 2003, (Rose Dep., Doc. 50-14, at 4), for ongoing injuries from the vehicle accident, (Coleman Dep. at 18-19). Specifically, at her first visit Plaintiff complained of back pain on the right side, shoulder pain to her waist, and rib pain, (Rose Dep. at 4), and over the years Dr. Rose's treatments focused on Plaintiff's recurring upper back, shoulder, and neck pain. (See id. at 8, 14, 28). Nevertheless, at many of Plaintiff's visits she complained of low back pain. (Id. at 5 (July 22, 2003, a different doctor had recommended an epidural injection to the lumbar (lower) spine for a herniated disk), 10 (Mar. 26, 2005, low back pain severity of 3 on a 10 point scale), 14 (Sept. 23, 2005, low back, leg, hip, and foot pain), 17 (Oct. 5, 2005, low back pain severity of 8 to 9 on a 10 point scale), 30 (June 20, 2006, lumbar pain severity of 5 on a 10 point scale)). In addition, Dr. Rose's medical records originally reflected that Plaintiff had complained of severe low back pain on June 5, 2006, but this was a typographical error that Dr. Rose corrected on January 18, 2007, noting that "low back" was erroneously transcribed into the record from his handwritten notes that referenced mid back pain. (Id. at 26). A copy of this edited medical record was provided to CSS's attorney, Dawn Hayes, on March 6,

---

[2] Plaintiff makes much of the fact that she was under the influence of pain medications that made her "high as a kite" during her initial conversation with Walker and was not sure what she did or did not say at the time. (See Coleman Dep. at 16, 21, 56-57). The only inconsistency between the initial conversation and Plaintiff's deposition testimony, however, pertained to whether or not Plaintiff suffered injuries from her vehicle accident. The material statement–that Plaintiff had never suffered an injury similar to the subject injury–was consistent in both conversations. Plaintiff does not assert that she was under the influence of any medications that would have impaired her cognitive abilities during her deposition.

2007. (Id. at 41).

Subsequently, Dr. Rose's records were given to Plaintiff's treating physician–Dr. Wright–for his evaluation.[3] (Brumbelow Submission to DFS, Doc. 50-15, at 2). Dr. Wright concluded that most or all of Plaintiff's need for treatment was due to conditions that predated the subject injury.[4] (Wright Dep., Doc. 50-18, at 13-14; Brumbelow Submission to DFS at 2; Walker Dep., July 27, 2007, Ex. A to Doc. 36, at 12-13). Based on this information, no further treatment for the subject injury was authorized (Brumbelow Submission to DFS at 2; Walker Dep., July 27, 2007, at 13), and in the Petition for Benefits case CSS asserted the defense that Plaintiff misrepresented her preexisting medical condition. (See Pretrial Stipulation & Pretrial Compliance Questionnaire at 3).

On June 21, 2007, Walker reported Plaintiff's case to Tim Brumbelow–a prosecution coordinator in the Special Investigations Unit of Travelers, (Brumbelow Dep., Feb. 15, 2008, Doc. 50-6, at 5, 7)–indicating that the case may need to be reported to the Florida Department of Financial Services, Division of Insurance Fraud ("DFS") for investigation. Brumbelow did not conduct his own investigation of Plaitniff's case, but on September 13,

---

[3] CSS also asserts that Dr. Rose's records were given to another doctor who treated Plaintiff for the subject injury–Dr. Weber–and that Dr. Weber made the same conclusions as Dr. Wright, (Walker Dep., July 27, 2007, at 13), and stated that he was "shocked that [Plaintiff] had expressed the same exact lower back complaints to him that she had expressed to Dr. Rose." (Brumbelow Submission to DFS at 2). Dr. Weber's statement is apparently contained in his deposition, but neither party has provided the Court with this deposition.

[4] Dr. Wright was given Dr. Rose's records that had not been edited to reflect that Plaintiff complained of mid back, rather than low back, pain on June 5, 2006. Nevertheless, Dr. Wright stated that the edit would not have changed his analysis because Plaintiff still complained of low back pain on June 20, 2006. (Wright Dep. at 7-8, 13-14).

2007, he forwarded the case to DFS. (Brumbelow Submission to DFS at 1). As part of its investigation, DFS obtained an affidavit from Walker. (Walker Aff., Doc. 50-13). In her affidavit, Walker stated that during her initial conversation with Plaintiff, Plaintiff stated that she had "pulled her back a few times, but that the pain had always resolved with rest." (Id. at 1). A review of this initial conversation indicates that Plaintiff did state that she had pulled muscles in her back a few times and she did not describe any treatment for these pulled muscles, but Plaintiff did not specifically say anything about her pulled muscles resolving with rest. (See Coleman Recorded Statement). Along with Walker's affidavit, DFS reviewed Plaintiff's deposition, (DFS Summary of Investigation, Doc. 50-17, at 1-2), Plaintiff's medical records from Dr. Rose, (id. at 2), Dr. Wright's deposition, (id. at 2-3), and Dr. Weber's deposition, (id. at 3), and DFS conducted its own interview with Plaintiff, in which she stated that "Dr. Rose has never treated me for lower back pain," (id. at 2). Based on this investigation, DFS concluded that there was probable cause to believe that Plaintiff committed insurance fraud in violation of section 440.105(4)(b)(2), Florida Statutes,[5] (id. at 4), and provided a charging affidavit to the State Attorney's office, (Ex. D to Doc. 36). Thereafter, an information charging Plaintiff with fraud was filed, (Doc. 50-19), a probable

---

[5] Section 440.105(4)(b)(2) provides: "It shall be unlawful for any person . . . [t]o present or cause to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to any provision of this chapter, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim." Ultimately, Plaintiff was charged with a violation of section 440.105(4)(b)(5), which provides: "It shall be unlawful for any person . . . [t]o knowingly make any false, fraudulent, or misleading oral or written statement, or to knowingly omit or conceal material information . . . for the purpose of obtaining workers' compensation coverage."

cause order was entered, (Ex. E to Doc. 36), and Plaintiff was arrested. Ultimately, the state court judge granted a motion for judgment of acquittal in her favor. (Ex. F to Doc. 36).

### III. Discussion

To prevail in her malicious prosecution action, Plaintiff must establish the following:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff.

Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1218 (Fla. 1986) (quotation omitted). "If any one of these elements is lacking, the result is fatal to the action." Id. CSS asserts that probable cause existed when it reported Plaintiff's case to DFS and that therefore Plaintiff's claim must fail.[6]

"'To establish probable cause, it is not necessary to show that the instigator of a lawsuit was certain of the outcome of the proceeding, but rather that he had a reasonable belief, based on facts and circumstances known to him, in the validity of the claim.'" Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1211 (11th Cir. 2010) (quoting Wright v. Yurko, 446 So.2d 1162, 1166 (Fla. 5th DCA 1984)). "In other words, the instigator must have had '[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" Id. (quoting Goldstein v. Sabella, 88 So. 2d 910, 911

---

[6] The parties disagree as to whether CSS caused the commencement of the criminal proceeding against Plaintiff; however, because the Court finds that probable cause existed for CSS to refer Plaintiff's case to DFS, it need not address the issue of causation.

(Fla. 1956)). "A lack of probable cause may be established by proof that a criminal proceeding was instituted on facts that could as well be explained innocently." Harris v. Lewis State Bank, 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986). Furthermore, "where it would appear to a cautious man that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information." Id. (quotation omitted).

CSS argues that because DFS made an independent finding of probable cause, probable cause existed for CSS to refer Plaintiff's case to DFS. Plaintiff, on the other hand, asserts that CSS provided DFS with false information and withheld exculpatory information from DFS and that therefore DFS's probable cause determination is insufficient to relieve CSS of liability. DFS's probable cause determination is akin to the issuance of a warrant, and it would generally create a presumption that probable cause existed. "Notwithstanding [this] presumption . . . , if pertinent information was withheld or not properly reported, [CSS] would not be insulated from liability simply because" DFS concluded that probable cause existed. Lindeman v. C.J. Stoll, Inc., 490 So. 2d 101, 103 (Fla. 2d DCA 1986).

Plaintiff asserts that Walker provided false statements to DFS in her affidavit and that CSS failed to provide DFS with Dr. Rose's edited records. Assuming that this is true, however, probable cause would have still existed. As noted previously, when making its probable cause determination, DFS considered the following: Walker's affidavit, Plaintiff's deposition, Dr. Rose's records, Dr. Wright's deposition, Dr. Weber's deposition, and DFS's own interview with Plaintiff, in which she stated that "Dr. Rose has never treated [her] for lower back pain." Even removing Walker's affidavit from consideration, the other

-8-

documentation that DFS reviewed created a reasonable suspicion that Plaintiff knowingly provided false or misleading information in an effort to obtain workers' compensation benefits. The fact that DFS had Dr. Rose's unedited records does not change this analysis. Plaintiff still complained of low back pain on multiple other occasions, including one week prior to the subject injury. Accordingly, the change to the June 5, 2006 entry from low back to mid back pain does not negate the existence of probable cause.

Moreover, even without relying on any presumption created by DFS's probable cause determination, probable cause existed when CSS reported Plaintiff's case to DFS. In doing so, CSS relied on Plaintiff's statement in her deposition that she had never had an injury similar to the subject injury; Dr. Rose's edited medical records that indicated a history of low back pain, including a complaint of low back pain one week prior to the subject injury; and Dr. Wright's opinion that Dr. Rose's records indicated that Plaintiff had a preexisting condition that was the cause of most or all of Plaintiff's need for treatment. This evidence creates a reasonable ground for suspicion, and CSS conducted a reasonable investigation–particularly in light of the fact that CSS knew DFS would also conduct its own investigation before any criminal charges were filed. Thus, because probable cause existed for CSS to refer Plaintiff's case to DFS, Plaintiff's malicious prosecution claim fails.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that CSS's Motion for Summary Judgment (Doc. 36) is **GRANTED**. The Clerk shall enter a judgment providing that Plaintiff takes nothing on her claims and close this case thereafter.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 18th day of June, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record